

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Robert Goldaris*
*Assistant United States Attorney*
*Robert.Goldaris@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4831*
*MAIN: 410-209-4800*
*FAX: 410-962-9293*

April 25, 2026

The Honorable Charles D. Austin
United States Magistrate Judge
101 W. Lombard Street
Baltimore, Maryland 21201

> **Re:** **Sentencing in *United States v. Tiago Alexandre Sousa-Martins***
> **Criminal No. CDA-26-0045**

Dear Judge Austin,

The government writes to address the applicability of U.S. Sentencing Guideline (USSG) § 3C1.2, Reckless Endangerment During Flight in this case. The Court should determine that Mr. Sousa-Martins's final offense level is 4 by applying the reckless endangerment sentencing enhancement, which is appropriate here because the defendant created a substantial risk of serious bodily injury to another person in the course of fleeing from law enforcement officers. The government further requests that the Court impose a sentence within the applicable guideline range of 0-6 months.

Mr. Sousa-Martins is not before the Court "because of his desire to support his family," ECF 34 at 4. He is being sentenced because of his own actions during a traffic stop on December 24, 2025, when he refused to exit his vehicle, despite law enforcement's orders to do so, and then smashed his van into multiple police vehicles – including one with a passenger restrained inside – in an attempt to flee from police before careening down a sidewalk between two residential buildings. In Mr. Sousa-Martins's post-*Miranda* statement to the Federal Bureau of Investigation, he confirmed that he intended to flee before, not because, officers fired on him. Although he did not remember if he was parked or already in gear, Mr. Sousa-Martins told the interviewing agent that after officers broke his driver's side window, he noticed a walkway between the buildings and then made the decision to drive through that walkway, believing that he might otherwise be shot by the officers.

(This Space Left Blank)

**The Crash**

When officers stopped Mr. Sousa-Martins, they placed themselves and their vehicles behind, in front, and to the side of his van as a precaution in case he tried to flee. Their concern was prescient. Not only did Mr. Sousa-Martins refuse to get out of his van when the officers directed him to do so—even after officers broke his side window—he put his vehicle in drive, travelling forward towards the officers and their vehicles. He then backed into the police van behind him and continued in reverse so forcibly that, after he struck the vehicle directly behind him, he forced the police van into the one parked behind it.



Figure 1. Damage to the rear bumper of the police van parked directly behind Sousa-Martins

That second van, into which Mr. Sousa-Martins pushed the first, was not empty. Sitting restrained inside was Solomon Serrano Esquivel, a detainee whom officers had apprehended earlier that morning. Mr. Serrano Esquivel later told law enforcement that he saw Mr. Sousa-Martins's van back up and drive forward multiple times as the officers moved away from it. He felt the impact when Mr. Sousa-Martins crashed his van into the front police vehicle and forced it back into the van where he sat. Notably, Mr. Serrano Esquivel told interviewers, consistent with the officers' statements, that he did not hear gunshots until *after* the crash. Mr. Sousa-Martins did not crash into the police vehicles because he was shot, he did so in an attempt to flee. Afterwards, paramedics transported Mr. Serrano Esquivel to a hospital for treatment for whiplash.

**The Sidewalk**



Figure 2. Buildings flanking sidewalk down which defendant fled

After crashing into the two police vans multiple times, Mr. Sousa Martins put his van in drive again and began driving forward to get away from the officers. It was then that the police opened fire upon him and that he drove away from officers, down the sidewalk, and between two residential buildings. Thankfully, no one was standing on the sidewalk at the time and harmed, but Mr. Sousa-Martins's actions to flee from police were reckless and created risk to the community.

**The Enhancement Applies**

While "the fact of a vehicular flight, alone, does not necessarily justify" the reckless endangerment sentencing enhancement, *United States v. Burnley*, 988 F.3d 184, 191 (4th Cir. 2021), Mr. Sousa-Martins's conduct is "more" than simply "flight alone." *Id.* The guidelines counsel that the enhancement is "construed broadly and includes preparation for flight," as well as "conduct [that] occurs in the course of resisting arrest." USSG § 3C1.2. cmt. n.3. In *Burnley*, the Fourth Circuit held that the § 3C1.2 enhancement applied when a defendant fled a traffic stop while two officers stood nearby interviewing the passenger of the vehicle. The *Burnley* court said it "made no difference" that no officers were injured (despite the defendant rolling his car over one officer's foot) and that all the officers eventually caught up to Burnley—the danger that his flight created "at that moment alone" satisfied § 3C1.2's "substantial risk" standard. *See Burnley* at 191. In affirming that no actual injury is required, the Fourth Circuit clarified that district courts should apply the enhancement even when a defendant's reckless driving creates the substantial risk of a harm that never materializes. Mr. Sousa-Martins's "reckless driving" at and into police vehicles not only "created a substantial risk of harm" to the arresting officers but caused actual harm, which "further supports" the application of the enhancement. *See, e.g., United States v. Hale*, 834

Fed.Appx. 789, 791 (4th Cir. Nov. 18, 2020).  Here, Mr. Sousa-Martins's harm is not imagined: in addition to damaging the two police vehicles, he slammed into a car holding another person.

Crashing into and damaging police vehicles and then careening down a residential sidewalk are precisely the circumstances in which the sentencing enhancement should apply. *See United States v. Pierce*, 388 F.3d 1136, 1138 (8th Cir. 2004) (applying the enhancement where a defendant rammed a police vehicle with his truck multiple times and then collided with parked cars); *United States v. Miner,* 108 F.3d 967, 970 (8th Cir. 1997) (applying the enhancement where the defendant rammed his car into a police roadblock and engaged in other pursuit-related conduct that created a substantial risk of serious injury to others) *United States v. Bouler*, 351 F. App'x 822, 824 (4th Cir. 2009) ("A defendant fleeing from police by car, striking two vehicles en route, creates an obvious risk that a traffic accident may occur and cause serious bodily injury.  Nor is it dispositive that Mr. Sousa-Martins's flight down a sidewalk did not actually run down a pedestrian.  Courts have held that the reckless standard may be satisfied by driving dangerously through residential streets, *See United States v. Jimenez*, 323 F.3d 320, 324 (5th Cir. 2003) (The recklessness evident in traveling at high speeds through a dense residential area at night, when a driver's ability to see pedestrians is compromised, is simply not vitiated by the fact that traffic is lighter during this time of day, nor is it undercut by the mere fortuity that actual harm to persons or property did not result).  Surely Mr. Sousa-Martins's actions driving down a pedestrian path are no less serious simply because he was similarly fortuitous.

## Conclusion

Mr. Sousa-Martins's actions created a substantial risk of serious bodily injury to another as he fled law enforcement, and the Court's sentencing decision should reflect that by applying the USSG § 3C1.2. enhancement and sentencing Mr. Sousa-Martins within the range of 0-6 months.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

           /s/
Robert Goldaris
Assistant United States Attorney